LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

Carol Lynn Finklehoffe. CA Bar No. 220309
LIPCON MARGULIES ALSINA & WINKLEMAN
One Biscayne Tower, Suite 1776
Miami, FL 33131
Tel: 305-373-3016
Fax: 305-373-6204
Email: cfinklehoffe@lipcon.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAMELA RAMSEY, Individually and as Personal Representative of the Estate of DONALD RAMSEY, deceased.<br><br>Plaintiff,<br><br>vs.<br><br>PRINCESS CRUISE LINES, LTD., a corporation for profit,<br><br>Defendant. | CASE NO.:<br><br>**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff, PAMELA RAMSEY individually and as Personal Representative of the Estate of DONALD RAMSEY, brings this action against Defendant PRINCESS CRUISE LINES, LTD., a for profit corporation, for personal injuries sustained. Plaintiff, PAMELA RAMSEY individually and as Personal Representative of the Estate of DONALD RAMSEY, seeks damages and demands a jury trial on all issues so triable against Defendant PRINCESS CRUISE LINES, LTD., and for good cause

alleges:

**THE PARTIES AND JURISDICTION**

1. Plaintiff, PAMELA RAMSEY, is sui juris, is a resident of Michigan and citizen of the United States.

2. At all times material, Plaintiff, PAMELA RAMSEY, was the wife of DONALD RAMSEY and the Personal Representative of the Estate of DONALD RAMSEY ("Decedent").

3. At all times material, Defendant PRINCESS CRUISE LINES, LTD., ("PRINCESS") is incorporated in Bermuda, with its worldwide headquarters, principal address and principal place of business located in the County of Los Angeles, California.

4. The matter in controversy exceeds the required amount, exclusive of interest and costs.

5. This action is being pursued in this Court, as opposed to state court as otherwise allowed by the Saving to Suitors Clause of 28 U.S.C. §1333, because Defendant PRINCESS unilaterally inserts a forum selection clause into its cruise tickets that requires its passengers to file cruise-related suits *only in this federal district and division*, as opposed to any other place in the world.

6. Defendant PRINCESS, at all times material hereto, personally or through an agent:

a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b. Was engaged in substantial activity within this state;

c. Operated vessels in the waters of this state;

d. Purposefully availed themselves of the benefits of conducting activities in California by purposefully directing their activities toward the state,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

thereby obtaining the benefits and protections of the state's laws;

e. The acts of the Defendant PRINCESS set out in this Complaint occurred in whole or in part in this state and/or county;

f. The cruise line ticket for the Plaintiff requires that suit be brought in this Court against the named Defendant PRINCESS in this action.

7. At all times material, Defendant PRINCESS was and is a common carrier engaged in the business of marketing, selling and operating a cruise line out of various ports throughout the world including, Los Angeles, California, Santiago, Chile and Miami, Florida.

8. At all times material, Defendant PRINCESS derived substantial revenue from cruises originating and terminating in various ports throughout the world including, Los Angeles, California, Santiago, Chile and Miami, Florida.

9. At all times material, Defendant PRINCESS operated, managed, maintained, supervised, chartered, and/or controlled a large commercial vessel named *Coral Princess* ("the subject vessel").

10. At all times material, Defendant PRINCESS transported fare-paying passengers, including the Plaintiff and Decedent, on cruises aboard its vessel *Coral Princess*.

11. This action is an action under general maritime law and the laws of California, as applicable.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

12. This lawsuit involves Defendant's (a) knowingly and intentionally deciding to proceed with a 14-night Cape Horn and Strait of Magellan cruise on March 5, 2020, despite having knowledge of the dangerous conditions and/or explosive contagiousness associated with COVID-19; (b) failing to abide by the regulations stated in the *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019* during passenger boarding, and during the re-boarding

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

process in Buenos Aires, Argentina; (c) knowingly and intentionally concealing from passengers warnings from the CDC and WHO concerning COVID-19 and its dangerous conditions; (d) failing to quarantine and/or provide protective equipment such as masks/gloves following the re-boarding of passengers in Buenos Aries, Argentina; (e) knowingly and intentionally waiting twelve days to order all passengers to isolate in their staterooms after being informed that passengers aboard the vessel had reported symptoms consistent with a positive COVID-19 diagnosis; and (f) Knowingly and intentionally allowing crewmembers with fevers and other COVID-19-like symptoms to continue working, including in roles relating to dinning and other positions with direct passenger contact and interactions.

13. As a result of the Defendant's negligence, both Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY contracted COVID-19 while aboard the *Coral Princess*. Both suffered actual physical injuries, experienced the symptoms of COVID-19, required significant medical care, with Decedent DONALD RAMSEY ultimately succumbing and dying as a result of contracting COVID-19. Both Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY feared for their own lives as well as the lives of each other.

14. On March 5, 2020, Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY boarded the *Coral Princess*. On or about March 31, 2020, both began experiencing symptoms of COVID-19. Between March 5, 2020 and March 31, 2020, Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY never disembarked the vessel and remained aboard the vessel at all times material.

15. As a result of his COVID-19 symptoms, Defendant PRINCESS initially provided medical care to Decedent DONALD RAMSEY in his stateroom including oxygen. His condition continued to deteriorate so severely that he was removed from his stateroom and brought to the medical area aboard the vessel. From there Decedent DONALD RAMSEY was transported to a hospital where he

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

remained until his death on April 28, 2020. The cause of death was determined to be COVID-19, acute respiratory distress syndrome and pneumonia. Plaintiff PAMELA RAMSEY never saw or spoke to her husband of 49 years once he was taken from their stateroom.

16. While aboard the *Coral Princes* Plaintiff PAMELA RAMSEY suffered various symptoms of COVID-19, including but not limited to, loss of taste, vomiting and diarrhea. She received her first positive COVID-19 test result on April 9, 2020. At present Plaintiff PAMELA RAMSEY continues to suffer from the effects of having COVID-19.

**Factual Allegations Surrounding the Cruise Industry and the Coronavirus**

17. In the recent months, there has been a worldwide outbreak of a new virus, the coronavirus, also known as COVID-19. The virus originated in China, and quickly spread throughout Asia, Europe, and most recently, North America.

18. The dangerous conditions associated with COVID-19 include its manifestations – severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock and/or multi-organ failure[1] – and/or its symptoms – fever, dry cough, and/or shortness of breath[2] – as well as the high fatality rate associated with contracting the virus.[3] The dangerous conditions associated with COVID-19 also

---

[1] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order*, https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

[2] *See* Mayo Clinic, *Symptoms and Causes*, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last accessed April 6, 2020); *see also* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

[3] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (identifying a 3.6% global fatality rate); Journal of the American Medical Association, *Case-Fatality Rate and Characteristics of Patients Dying in relation to COVID-19 in Italy*, https://jamanetwork.com/journals/jama/fullarticle/2763667 (identifying a 7.2% and 2.3% fatality rate in Italy and China, respectively).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

include its extreme contagiousness. For example, a person with COVID-19 infects, on average, another 2.5 people, and COVID-19 is therefore more contagious than Ebola or Influenza.[4]

19. There have been over 103 million cases worldwide and over 2.2 million deaths as a result of the coronavirus.[5] Those fatalities have largely been amongst the elderly population, and those with underling medical complications.

20. Outlined below is a timeline of events relevant to this lawsuit against Defendant. This timeline supports Defendant having actual knowledge of the dangerous conditions and/or explosive contagiousness associated with COVID-19 at the time the Plaintiffs contracted COVID-19:

a. December 31, 2019 – The local government in Wuhan, China, confirmed with the World Health Organization (hereinafter "WHO") that local health authorities in Wuhan were treating an influx of dozens of patients with what appeared to be novel cases of pneumonia with an unknown cause.

b. January 5-7, 2020 – China announced that the novel pneumonia cases in Wuhan were not caused by severe acute respiratory syndrome (hereinafter "SARS") or middle-east respiratory syndrome (hereinafter "MERS") – but COVID-19 – which belongs to the highly-contagious family of coronaviruses, including SARS and MERS.

c. January 11, 2020 – The Wuhan Municipal Health Commission announced the first death caused by COVID-19.

d. January 20, 2020 – A situation report published by the WHO confirmed COVID-19 cases outside of mainland China in Thailand, Japan and South Korea, which the WHO believed to have been exported from Wuhan, China. The situation report also identified 282 positive COVID-19 diagnoses worldwide with 278 of those positive cases

---

[4] Popular Science, *COVID-19 Contagiousness*, https://www.popsci.com/story/health/how-diseases-spread/.

[5] *See*, https://www.worldometers.info/coronavirus/?utm_campaign=homeAdvegas1?

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

within China.

e. January 23, 2020 – Chinese authorities take the unprecedented measure of closing off Wuhan – a city of over 11,000,000 people – to stop the spread of COVID-19.

f. January 24, 2020 – The United States Coast Guard issued a Maritime Safety Information Bulletin (MSIB) on January 24, 2020, the entitled *Novel Coronavirus Precautions*, directed to all vessel owner and operators[6]. The MSIB alerted shipowners and operators of the outbreak, provided guidance and mandated that they report sick or deceased crew/passengers to the Center for Disease Control (hereinafter the "CDC").

g. January 24, 2020 – the Department of Transportation Maritime Administration (hereinafter "MARAD") issued a Maritime Security Communication with Industry (hereinafter "MSCI") advisory entitled *2020-002A-Global-Novel Coronavirus Outbreak*.[7]

h. January 30, 2020 – WHO declared COVID-19 a "global health emergency" – recognizing that COVID-19 posed a risk beyond China. The U.S. Department of State issued a Level 4 (highest level) travel advisory as it related to U.S. citizens who planned to travel to China.[8]

i. January 31, 2020 – MARAD issued another MSCI advisory entitled *2020-0004-Global-Novel Coronavirus Outbreak*[9] again alerting shipowners and operators, such as the Defendant PRINCESS, to coronavirus outbreak and reporting requirements to the CDC. MARAD issued a follow-up MSCI advisory on February 8, 2020 entitled *2020-0005-Global-Novel Coronavirus Outbreak*.[10]

[6] *See*, https://www.maritimedelriv.com/storage/app/media/Agencies/USCG/USCG_MSIB/USHQ_MSIB_01_20_MTS_Precautions.pdf

[7] *See*, https://www.maritime.dot.gov/content/2020-002a-global-novel-coronavirus-outbreak

[8] Ryan Goodman and Danielle Schulkin, *Timeline of the Coronavirus Pandemic and U.S. Response*, Just Security, April 13, 2020, https://www.justsecurity.org/69650/timeline-of-the-coronavirus-pandemic-and-u-s-response/.

[9] *See*, https://www.maritime.dot.gov/content/2020-004-global-novel-coronavirus-outbreak

[10] *See*, https://www.maritime.dot.gov/content/2020-005-global-novel-coronavirus-outbreak

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

j. February 2, 2020 – China reports that the death toll from COVID-19 in mainland China (361) exceeded the death toll in mainland China from the SARS outbreak in the early 2000s (349).

k. February 3, 2020 – The United States Declares a Public Health Emergency.[11]

l. February 5, 2020 – Chinese officials announced that nearly 500 people in mainland China have died as a result of COVID-19.

m. February 5, 2020 (*Diamond Princess*) – Passengers aboard the *Diamond Princess* near Yokohama, Japan began a two-week quarantine after nine (9) passengers and one (1) crewmember tested positive for COVID-19 while aboard the vessel. See *infra* for further details.

n. On February 13, 2020 – The CDC published the Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections. See *infra* for further details.

o. February 18, 2020 – In a direct response to the crisis aboard the *Diamond Princess*, the CDC stated that "the rate of new reports of positives new on board [the *Diamond Princess*], especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk.[12]

p. February 21, 2020 (*Grand Princess*) – The *Grand Princess* embarks on a voyage despite its cruise operator, Princess, having knowledge that at least one of its passengers from a prior voyage who disembarked the

[11] *See*, https://www.google.com/search?sxsrf=ALeKk00ZRI5UcrchTw66d_8KafFXjk4ygA%3A1598026390832&source=hp&ei=lvI_X-KCMMjt5gLDyKGYCw&q=total+cases+of+covid+19+worldwide&oq=Total+cases+of+&gs_lcp=CgZwc3ktYWIQARgIMgIIADIICAAQsQMQgwEyAggAMgIIADIICAAQsQMQgwEyAggAMgUIABCxAzIICAAQsQMQgwEyCAgAELEDEIMBMgIIADoOCC4QsQMQxwEQowIQkwI6BQguELEDOggILhDHARCvAVDWCVi4JGDZQmgAcAB4AIAB2QKIAckJkgEIMTAuMC4xLjGYAQCgAQGqAQdnd3Mtd2l6&sclient=psy-ab

[12] *See* Centers for Disease Control and Prevention, Update on the Diamond Princess Cruise Ship in Japan, Feb. 18, 2020, https://www.cdc.gov/media/releases/2020/s0218-update-diamond-princess.html (last visited April 6, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

*Grand Princess* on February 21, 2020 had symptoms of COVID-19 while aboard the vessel. See *infra* for further details.

q. February 19-25, 2020 (*Diamond Princess*) – Following the two-week quarantine aboard the *Diamond Princess*, Japanese officials announced that of the 3,711 passengers aboard the vessel, over 700 tested positive for COVID-19 (18.8%) – the largest cluster of positive COVID-19 cases outside of mainland China at that time. See *infra* for further details.

r. February 25, 2020 – Dr. Nancy Messonnier, Director of the CDC's National Center for Immunization and Respiratory Diseases announce that the COVID-19 is heading toward pandemic status.

s. March 4, 2020 (*Grand Princess*) – At least one passenger tests positive for COVID-19. The following day, two princess passengers and nineteen crew test positive for COVID-19.

t. March 9, 2020 (*Grand Princess*) – The *Grand Princess* docked in Oakland, California and its passengers were held in quarantine. Of the 3,553 passengers onboard, 21 of the 46 first round of passengers tested for COVID-19 tested positive (45%). Many passengers ultimately refused COVID-19 testing so that they could disembark and travel to the safety of their homes quicker.

u. March 12, 2020 – Spain reported over 3,000 COVID-19 cases and 84 COVID-19 related deaths.

v. March 14, 2020 – Spain ordered a nation-wide lockdown, banning all intra-country travel except travel to procure food, medicine and travel related to essential business operations.

21. The CDC's February 13, 2020, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections aboard ships, like the *Coral Princess*. *See* the Memorandums cited at footnote 1.

22. In view of the fact that Dr. Grant Tarling, the Chief Medical Officer of Defendant's parent company Carnival Corporation, stated that Defendant has "deep

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

partnerships with… the U.S. Centers for Disease Control and Prevention,”[13] Defendant knew and/or should have been aware of this Memorandum, including, but not limited to, the dangerous conditions and/or explosive contagiousness associated with COVID-19, and it's all but certain presence aboard the *Coral Princess* at that time.

23. This Memorandum provided cruise vessel operators, like Defendant, with numerous helpful considerations to assist in detecting and preventing the spread of COVID-19 amongst its crewmembers, passengers and its vessels at large, some of which include:

- "Early detection, prevention, and control of Coronavirus Disease 2019 (COVID-19) on ships **is important** to protect the health of travelers on ships and to avoid transmission of the virus by disembarking passengers and crew members who are suspected of having COVID-19";
- "Identifying and isolating passengers and crew with possible symptoms of COVID-19 as soon as possible **is needed** to minimize transmission of this virus";
- "To reduce spread of respiratory infections including COVID-19, CDC **recommends** that ships encourage crew members and passengers to
  - Postpone travel when sick
  - Watch their health
  - Self-isolate and inform the onboard medical center immediately if they develop a fever (100.4°F / 38°C or higher), begin to feel feverish, or develop other signs or symptoms of sickness
  - Use respiratory, cough, and hand hygiene

[13] This information was posted on PRINCESS' website in a video regarding Enhanced Boarding Procedures due to COVID-19 on February 29, 2020. *See* Princess Cruise Lines, Ltd., *Enhanced Boarding Procedures and Onboard Preventative Measures*, PRINCESS CRUISE LINES, LTD., February 29, 2020, https://www.princess.com/news/notices_and_advisories/notices/dr-grant-tarling-chief-medical-officer.html (last visited April 22, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

- Advise passengers and crew of the importance of covering coughs and sneezes with a tissue. Dispose used tissues immediately in a disposable container (e.g., plastic bag) or a washable trash can.

- Remind passengers and crew members to wash their hands often with soap and water, especially after coughing or sneezing. If soap and water are not available, they can use a hand sanitizer containing 60%-95% alcohol)"

- "**Deny boarding of a passenger or crew member** who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation";

- "Passengers and crewmembers who have had high-risk exposures to a person suspected of having COVID-19 **should be** quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members **should** self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure";

- "**Isolate passengers or crew onboard** who are suspected of having COVID-19 infection in a single-occupancy cabin with the door closed until symptoms are improved."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

24. According to Dr. Martin Cetron, the Director of the CDC's Division of Global Migration and Quarantine, cruise ships have a higher risk of infectious disease spread than arenas, theaters and restaurants.[14]

25. Defendant and the cruise industry got an early warning of how easily

---

[14] Taylor Dolven, Sarah Blaskey, Nicholas Nehamas, and Alex Harris, *COVID CRUISES: Cruise Ships Sailed on Despite the Coronavirus. Thousands of People Paid the Price*, MIAMI HERALD, Apr. 23, 2020, https://www.miamiherald.com/news/business/tourism-cruises/article241640166.html (last visited April 23, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

the virus could spread on its massive ocean liners when the first cases emerged on the *Diamond Princess*, also owned and operated by Defendant, in early February 2020 in Yokohama Harbor. The outbreak began with ten cases, and rapidly multiplied to seven hundred cases, as a result of the flawed two week quarantine on the ship.

26. Defendant and the cruise industry got another warning of how severe the virus could spread on cruise ships when the *Grand Princess*, also owned by Defendant, had a breakout in late February 2020 off the coast of California. PRINCESS had knowledge that at least one of its passengers from a prior voyage who disembarked February 21, 2020, had symptoms of coronavirus, and yet it made the conscious decision to proceed with the voyage that began on February 21, 2020, with another three thousand passengers on an infected ship. Prior to boarding the February 21, 2020 voyage on the *Grand Princess*, passengers were simply asked to fill out a piece of paper confirming they were not sick. Not one passenger was questioned, let alone examined in any capacity. As a result of PRINCESS' lackadaisical approach to the safety of passengers and crew, 103 passengers tested positive for the coronavirus and two people have died so far.

27. The Center for Disease Control (CDC) issued a statement on February 18, 2020 that "the rate of new reports of positives new on board [the *Diamond Princess*], especially among those without symptoms**, highlights the high burden of infection on the ship and potential for ongoing risk**." Seven of the *Diamond Princess*' passengers died as a result of COVID-19.

28. Defendant's Chief Medical Officer Dr. Grant Tarling took to the media in late February 2020 to reassure crew and future passengers "we've learned from our recent experiences,' and the measures would in part 'enhance the cruising

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

experience so it continues to be an exceptional and safe way to travel."[15]

29. On February 29, 2020, in a videotaped message regarding COVID-19, posted on PRINCESS' website and its YouTube page, Dr. Tarling stated "in light of the global spread of coronavirus" Defendant have updated its boarding procedures onboard all its ships, including "temperature checks of all boarding guests," and "conducting thorough passport review and verification ensure guests have not traveled within the past 14 days to countries where there is a travel restriction or health alert due to widespread coronavirus spread."[16] Yet, PRINCESS did not do such for the boarding of the March 5, 2020 *Coral Princess* cruise. Nor did PRINCESS do such during the re-boarding of its passengers on or about March 19, 2020 in Buenos Aires, Argentina.

30. It would only stand to reason, that knowing of these prior traumatic outbreaks on another of its vessels less than a month prior to the subject voyage on the *Coral Princess*, that Defendant PRINCESS would have learned to take all necessary precautions to keep its passengers, crew and the general public safe. This likely would have meant that the voyage, in its entirety, would have been cancelled. Despite knowing full well of the tremendous risk faced by all the passengers (and crew) aboard, Defendant PRINCESS set sail. For this reason and those further stated herein, Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY contracted the coronavirus, exhibited symptoms of COVID-19 and Decedent DONALD RAMSEY died as a result of Defendant's negligence.

**Factual Allegations Surrounding the Coronavirus**

---

[15] Duncan McNab, *Coronavirus Australia: Explosive Developments in Ruby Princess Cruise Ship Saga*, 7NEWS, April 5, 2020, https://7news.com.au/lifestyle/health-wellbeing/coronavirus-australia-explosive-developments-in-ruby-princess-cruise-ship-saga-c-957325 (last visited April 22, 2020).

[16] Jacquie McNish, Rebecca Smith, Erin Ailworth, and Rachel Pannett, *Cruise Ships Set Sail Knowing the Deadly Risk to Passengers and Crew*, WSJ, May 1, 2020, https://www.wsj.com/articles/cruise-ships-set-sail-knowing-the-deadly-risk-to-passengers-and-crew-11588346502 (last visited May 4, 2020).

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

**Outbreak on the *Coral Princess* Voyage**

31. Before boarding on the subject voyage, passengers, including Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY contacted PRINCESS over their concerns of the vessel's safety surrounding the coronavirus. PRINCESS assured passengers its vessel was not affected by the coronavirus, was safe, and that there was no need for concern.

32. Relying on PRINCESS' assurances, passengers, Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY boarded the *Coral Princess* on March 5, 2020, in Santiago, Chile and set sail on a 14-night Cape Horn and Strait of Magellan cruise.

33. During the boarding process on March 5, 2020, passengers, including Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY were not questioned, nor medically examined, including, but not limited to, temperature taken, before PRINCESS allowed passengers onboard the *Coral Princess*. As a result, PRINCESS exposed PAMELA RAMSEY and DONALD RAMSEY to exposure of COVID-19 and/or to an actual risk of immediate physical injury and/or death.

34. On March 7, 2020, Vice President Mike Pence met with top cruise industry executives (including the CEOs of *Carnival*, Royal Caribbean and Norwegian cruise lines), in order to address the impact of COVID-19 on the cruise industry, specifically.

35. On March 8, 2020, only three days after the *Coral Princess* set sail on the subject voyage, the CDC expressly warned "U.S. citizens, particularly travelers with underlying health conditions, <u>should not travel by cruise ship</u>. CDC notes

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

increased risk of infection of Covid-19 in a cruise ship environment." [17]

36. On March 12, 2020, PRINCESS announced that it would be voluntarily pausing global operations of its 18 cruise ships for two months.[18]

37. Despite these alarming developments, PRINCESS took no action on the subject voyage and did not inform and/or warn passengers, including Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY, about their actual risk of exposure of COVID-19 and/or to an actual risk of immediate physical injury and/or death.

38. On March 13, 2020, the *Coral Princess* reached Port Stanley, Falkland Islands. Hours after leaving the Falkland Islands the captain made a troubling announcement, the cruise would not be stopping at its next scheduled port of call, Puerto Madryn, Argentina; instead the vessel would be heading to Buenos Aires, Argentina with the intent to end the cruise.

39. On March 19, 2020 the *Coral Princess* arrived to Buenos Aires, Argentina. However, only those passengers holding an Argentinean passport and/or who had confirmed flights departing on March 19, 2020 were cleared to disembark. Unfortunately, many passengers missed their flights and re-boarded the *Coral Princess.*

40. Despite knowing that Argentina had announced its first positive COVID-19 case on March 3, 2020, PRINCESS nevertheless allowed the already disembarked passengers, some of who were potentially infected with the virus, to re-board the vessel without questioning, medically examining, providing personal protective equipment such as masks and gloves and/or implementing isolation

---

[17] U.S Department of State-Bureau of Consular Affairs, *Cruise Ship Passengers*, (Last Updated March 8, 2020) https://travel.state.gov/content/travel/en/international-travel/before-you-go/travelers-with-special-considerations/cruise-ship-passengers.html

[18] Princess Cruises Announces a Voluntary and Temporary Pause of its Global Ship Operations for 60 Days. https://www.prnewswire.com/news-releases/princess-cruises-announces-a-voluntary-and-temporary-pause-of-its-global-ship-operations-for-60-days-301022277.html

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

requirements. As a result, Defendants exposed Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY to exposure of COVID-19 and/or to an actual risk of immediate physical injury and/or death.

41. On the night of March 19, 2020, the Argentinian government announced that the *Coral Princess* would be required to remain in port for an indeterminate number of days if it choose to stay in port; PRINCESS therefore made the decision to leave the Argentinian port immediately.

42. Thereafter, *Coral Princess* was denied multiple ports of entry including, Uruguay and Brazil before announcing that it would be sailing to Ft. Lauderdale, Florida.

43. During the sailing to Ft. Lauderdale, Florida, PRINCESS again failed to implement even the slightest precautionary procedures. On or about March 28, 2020 PRINCESS hosted a "crossing of equator" party were PRINCESS allowed hundreds of passengers to be in close proximity to one another.

*On or about March 28, 2020 Princess hosted a "crossing of equator" party aboard Coral Princess.*

44. Within a matter of days, as should have been anticipated, a coronavirus outbreak occurred on the *Coral Princess*.

45. After allowing potentially infected passengers to roam freely

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

throughout the *Coral Princess*, for twelve days, the captain instructed all passengers to self-isolate in their staterooms. However, the decision had come too late, several passengers including Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY had already begun to experience COVID-19-like symptoms.

46. As a result of PRINCESS' grossly negligent approach to the safety of the passengers on board the *Coral Princess*, its passengers, including Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY aboard the *Coral Princess* were at an actual risk of immediate physical injury and death.

47. Consequently, Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY as well as thousands of passengers on the *Coral Princess* were subjected to the risk of contracting the highly contagious coronavirus as a result of PRINCESS' grossly negligent approach to the safety of the passengers.

48. As a result of PRINCESS' actions and/or omissions, Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY both contracted COVID-19, experienced the symptoms of COVID-19, required significant medical care and Decedent DONALD RAMSEY passed away thereafter. Both, Plaintiff PAMELA RAMSEY and Decedent DONALD RAMSEY feared for their lives– all of which could have been easily avoided if simply given the choice to stay at home and reschedule the cruise and/or cancelled the subject cruise and/or implemented reasonable policies and procedures to prevent the spread of the highly contagious coronavirus.

49. PAMELA RAMSEY will continue to suffer and will require medical services in the future.

50. PRINCESS' negligent misconduct was predicated on a profit motive because, simply put, cruise lines like Defendant make no money when passengers don't sail. Defendant's knowing, intentional and reckless conduct subjects Defendant to the imposition of punitive damages. This voyage set sail knowing it

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

was a virtual certainty that there would be an outbreak, similar, if not identical, to those which PRINCESS' other vessels (*Diamond Princess*, *Grand Princess*) had already very publicly faced. This callous disregard for the safety and well-being of its passengers, including PAMELA RAMSEY and DONALD RAMSEY, must be answered for.

51. Each and all of the foregoing conditions, including but not limited to, the actual risk of exposure to the coronavirus, were known to PRINCESS prior to the time the *Coral Princess* set for sail on its voyage on March 5, 2020. PRINCESS subjected passengers, including PAMELA RAMSEY and DONALD RAMSEY, to the highly contagious coronavirus, and exposed them to actual risk of immediate physical injury and death due to its:

a. Knowingly and intentionally deciding to proceed with a 14-night Cape Horn and Strait of Magellan cruise on March 5, 2020, despite having knowledge of the dangerous conditions and/or explosive contagiousness associated with COVID-19;

b. Failing to abide by the regulations stated in the *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019* during passenger boarding, and during the re-boarding process in Buenos Aires, Argentina;

c. Knowingly and intentionally concealing from passengers warnings from the CDC and WHO concerning COVID-19 and its dangerous conditions;

d. Failing to quarantine and/or provide protective equipment such as masks/gloves following the re-boarding of passengers in Buenos Aries, Argentina;

e. Knowingly and intentionally waiting twelve days to order all passengers to isolate in their staterooms after being informed that

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

passengers aboard the vessel had reported symptoms consistent with a positive COVID-19 diagnosis; and

f. Knowingly and intentionally allowing crewmembers with fevers and other COVID-19-like symptoms to continue working, including in roles relating to dinning and other positions with direct passenger contact and interactions.

**COUNT I**
**NEGLIGENCE AGAINST DEFENDANT**

Plaintiffs hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 51, and alleges as follows:

52. It was the duty of Defendant to provide Plaintiff and Decedent with reasonable care under the circumstances.

53. Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiff and Decedent with reasonable care under the circumstances.

54. Plaintiff and Decedent were injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

a. Failure to use reasonable care to provide and maintain a safe voyage for passengers, including the Plaintiff and Decedent, fit with proper and adequate safety, protection, cleaning products and equipment, especially during a known and escalating, global pandemic of the coronavirus, and when a prior passenger showed symptoms of the coronavirus, and care; and/or

b. Failure to adequately warn passengers, including the Plaintiff and Decedent, before boarding the vessel that a passenger on a prior cruise showed symptoms of the coronavirus; and/or

c. Failure to warn passengers, including the Plaintiff and Decedent, of the

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

dangers and risks of the coronavirus and/or infectious disease, including, but not limited to, failing to inform the passengers of the extent of the prior outbreaks and/or risks and/or symptoms; and/or

d. Failure to adequately warn passengers, including the Plaintiff and Decedent, before boarding the vessel that the vessel's medical facility, including the medical personnel, equipment, and supplies, would not be able to adequately handle a coronavirus outbreak onboard the *Coral Princess*; and/or

e. Failure to adequately examine a passenger's and/or crewmember's health condition before allowing them to board the vessel; and/or

f. Failure to have adequate medical personnel during the boarding process to determine whether to allow boarding to passengers and/or crewmembers; and/or

g. Failure to have adequate medical personnel to determine whether to allow boarding to passengers and/or crewmembers in accordance with CDC guidelines; and/or

h. Failure to adequately sanitize and/or disinfect the vessel's common areas and passenger's cabin; and/or

i. Failure to adequately sanitize and/or disinfect plates, cups, food trays, utensils, ice machines and drinking fountains; and/or

j. Failure to adequately quarantine those passengers which re-boarded the *Coral Princess* after they had disembarked in Buenos Aires, Argentina; and/or

k. Failure to adequately quarantine passengers and/or crewmembers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

l. Failure to provide prompt, proper, and adequate medical treatment to passengers infected with the coronavirus, and/or, infectious disease, and/or virus and/or exhibiting symptoms of a virus and/or an infectious disease; and/or

m. Failure to serve uncontaminated food; and/or

n. Failing to practice safe and sanitary food practices; and/or

o. Failure to adequately and properly eradicate the coronavirus or some other virus causing illness to passengers on the *Coral Princess*; and/or

p. Failure to take adequate steps to prevent an outbreak of the coronavirus and/or virus and/or infectious disease when it knew or should have known that such outbreaks had occurred on prior cruise voyages; and/or

q. Failure to take adequate medical precautions when a passenger is exhibiting symptoms of the coronavirus and/or virus and/or infectious disease so that it can be timely diagnosed; and/or

r. Failure to perform testing on ill passengers to confirm the type and nature of the virus; and/or

s. Failure to have adequate policies and procedures in place to manage and contain the outbreak and spread of the coronavirus and/or virus and/or infectious disease; and/or

t. Failure to provide a sanitary vessel to prevent outbreaks of the coronavirus and/or virus and/or infectious diseases, including, but not limited to, inadequate and/or ineffective cleaning/sanitary procedures and/or lack of equipment and supplies; and/or

u. Failure to take adequate steps to contain the spread of the coronavirus and/or virus and/or infectious diseases, which it knew or should have known could cause other dangerous medical conditions; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

v. Knowingly refusing to cancel and/or offer refunds to passengers, including the Plaintiff and Decedent, as a result of a passenger on a prior cruise showing symptoms of coronavirus; and/or

w. Failing to have proper policies and procedures in place to determine whether to offer refunds as a result of the risk of exposing passengers and crew to the highly contagious coronavirus due to a passenger on a prior cruise showing symptoms of coronavirus; and/or

x. Failing to cancel the voyage and/or offer refunds despite knowing a passenger on a prior voyage showed symptoms of the coronavirus and despite knowing that multiple prior similarly situated voyages ended in widely publicized catastrophe; and/or

y. Exposing passengers, including the Plaintiff and Decedent, to unsanitary conditions that they were unprepared for without proper warning from Defendant; and/or

z. Failure to provide adequate training, instruction, and supervision to the Defendant employees; and/or

aa. Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

bb. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers, including the Plaintiff and Decedent, during an outbreak of a virus and/or infectious disease, including , but not limited to, the coronavirus; and/or

cc. Failure to determine and/or appreciate the hazards associated with allowing passengers to congregate within close distances, including within six feet, in common areas of the vessel; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

dd. Knowing, as a result of previous similar incidents and/or passengers showing symptoms of the coronavirus, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

ee. Failure to amend its cancellation policy to allow the passengers, including the Plaintiff and Decedent, to cancel their cruise without financial penalty in light of the significant actual risk due to the coronavirus global pandemic; and/or

ff. Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

55. The above acts and/or omissions caused and/or contributed to Plaintiff and Decedent contracting the coronavirus and/or other virus and/or medical complications arising from it because the Plaintiff and Decedent would not have boarded the vessel had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to Plaintiff and Decedent.

56. In addition, the above acts and/or omissions caused and/or contributed to Plaintiff and Decedent contracting the coronavirus and/or other virus and/or medical complications arising from it because the Plaintiff and Decedent would have disembarked the vessel in Port Stanley, Falkland Islands knowing that passengers on the subject voyage would have been allowed to re-board the *Coral Princess* after already disembarking and potentially becoming infected with the coronavirus had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to passengers, including the Plaintiff and Decedent.

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

57. The above acts and/or omissions caused and/or contributed to the Plaintiff and Decedent contracting the coronavirus and/or other virus and/or medical complications arising from it because the coronavirus and/or other virus outbreak would not have occurred but for Defendant's failure to adequately sanitize the vessel in a reasonably safe condition.

58. At all material times, Defendant had exclusive custody and control of the vessel, *Coral Princess*.

59. Defendant knew of the foregoing conditions causing passengers, including the Plaintiffs, to be exposed to an actual risk of physical injury and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

60. As a result of the negligence of Defendant, Plaintiff and Decedent were:

a. exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of developing COVID-19, with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b. contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future; and/or

c. feared for their own lives as well as the life of their spouse, as a result of contracting COVID-19; and/or

d. the death of the Decedent.

WHEREFORE the Plaintiff PAMELA RAMSEY Individually and as Personal Representative of the Estate of DONALD RAMSEY demands judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT**

Plaintiffs hereby incorporates by reference, as though fully set forth herein, paragraphs 1 through 51, and alleges as follows:

61. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiff and Decedent were placed in an immediate risk of physical harm and contracted COVID-19 while aboard the *Coral Princess*.

62. Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiff and Decedent, such as fear and anxiety, including, but not limited to, of contracting COVID-19. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia,

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

lack of sleep, poor sleep, nightmares, and respiratory difficulties.

63. Plaintiff and Decedent were forced to remain on a vessel that had multiple passengers that tested positive of coronavirus and were on the vessel for multiple days, and were then forced to disembark the vessel in tight groups, without adequate personal protective equipment, including masks and gloves, creating an actual risk of exposure to coronavirus, causing a reasonable fear of great bodily harm and death. At all times material, the Plaintiff and Decedent were in the zone of danger at risk of serious bodily harm, including death due to, *inter alia*, the highly contagious coronavirus, which had and has no vaccine.

64. Plaintiff and Decedent were placed in the zone of danger as a result of Defendant's dangerously lackadaisical approach in dealing with the coronavirus that was known to be on board the vessel via passengers on a prior voyage that tested positive for the coronavirus. Plaintiff and Decedent were in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

65. Plaintiff PAMELA RAMSEY's, fear of death and experience of mental, emotional and/or physical harm was genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of Defendant. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

66. As a result of the negligent inflection of emotional distress by Defendant, Plaintiff PAMELA RAMSEY were:

a. exposed to an actual risk of the physical injury, which caused severe mental and emotional anguish, including, but not limited to, anguish, anxiety, fright, horror, suffering, and traumatized by the fear of developing COVID-19, with physical manifestations of that mental and

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204

emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties; and/or

b. contracted the coronavirus and/or virus and/or suffered medical complications arising from it and were injured about her body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future; and/or

c. feared for her own life and for that of her husband, as a result of contracting COVID-19 aboard the *Coral Princess*.

WHEREFORE the Plaintiff PAMELA RAMSEY, Individually and as Personal Representative of the Estate of DOANLD RAMSEY demands judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**<u>Prayer for Relief</u>**

WHEREFORE, the Plaintiff PAMELA RAMSEY Individually and as Personal Representative of the Estate of DOANLD RAMSEY respectfully request the Court enter judgment in her favor and against the Defendant as follow:

1. To enter judgment in favor of the Plaintiff against Defendant on all

causes of action as alleged herein;

2. To award compensatory damages in the amount to be ascertained at trial;

3. To award punitive damages, as permitted by law;

4. To award costs of suit, as permitted by law;

5. For prejudgment interest according to proof; and

6. To enter such other and further relief as the Court deems just under the circumstances.

DATED: February 22, 2021.

LIPCON MARGULIES ALSINA & WINKLEMAN, P.A.

BY: *s/ Carol L. Finklehoffe*
CAROL L. FINKLEHOFFE
*Attorney for Plaintiffs*

**Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims for relief.

DATED: February 22, 2021.

LIPCON MARGULIES ALSINA & WINKLEMAN, P.A.

BY: *s/ Carol L. Finklehoffe*
CAROL L. FINKLEHOFFE
*Attorney for Plaintiffs*

LIPCON, MARGULIES, ALSINA & WINKLEMAN P.A.
2 S Biscayne Boulevard, Suite 1776
MIAMI, FL 33131
TELEPHONE: (305)373-3016 FAX: (305)373-6204